SCOTT K. CANEPA, ESQ. (#4556)
TERRY W. RIEDY, ESQ. (#3895)
**CANEPA RIEDY ABELE & COSTELLO**
851 South Rampart Boulevard, Suite 160
Las Vegas, Nevada 89145-4885
Telephone:  (702) 304-2335
Facsimile:   (702) 304-2336
scanepa@canepariedy.com
triedy@canepariedy.com

J. RANDALL JONES, ESQ. (#1927)
WILLIAM L. COULTHARD, ESQ. (#3927)
NATHANAEL R. RULIS, ESQ. (#11259)
**KEMP, JONES & COULTHARD, LLP**
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001
jrj@kempjones.com
mjg@kempjones.com
nrr@kempjones.com

*Attorneys for Plaintiffs Jennifer Nunes,*
*Dennys Sian, Ramona Wells, Jayson*
*Morgan and Keyatra Grant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JENNIFER NUNES, a Nevada citizen, DENNYS SIAN, a Nevada citizen, RAMONA WELLS, a Nevada citizen; JAYSON MORGAN, a Nevada citizen, and KEYATRA GRANT, a Nevada citizen<br><br>Plaintiffs,<br><br>v.<br><br>AFFINITYLIFESTYLES.COM, INC. dba Real Water, a Nevada corporation, ROE Defendants 1-100.<br><br>Defendants. | Case No.:  2:16-cv-02265-APG-NJK<br><br><br>**PLAINTIFFS' OPPOSITION TO AFFINITYLIFESTYLES.COM, INC. d/b/a REAL WATER'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) AND 9(B); AND MOTION TO STRIKE PURSUANT TO FRCP 12(F)** |

/ / /

/ / /

**PLAINTIFFS' OPPOSITION TO AFFINITYLIFESTYLES.COM, INC. d/b/a REAL WATER'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) AND 9(B); AND MOTION TO STRIKE PURSUANT TO FRCP 12(F)**

Plaintiffs by and through its undersigned counsel, files this Response to Affinitylifestyles.com, Inc. d/b/a Real Water's Motion to Dismiss Pursuant to FRCP 12(B)(6) and 9(B); and Motion to Strike Pursuant to FRCP 12(F). This Response is made and based upon the pleadings and papers on file herein, the following Memorandum of Points and Authorities, and any oral argument the Court may entertain at the time set for the hearing of this matter.

DATED this 21st day of October 2016.

**CANEPA RIEDY ABELE & COSTELLO**


/s/   Terry W. Riedy
SCOTT K. CANEPA, ESQ.
Nevada Bar No. 004556
TERRY W. RIEDY, ESQ.
Nevada State Bar No. 003895
851 South Rampart Boulevard, Suite 160
Las Vegas, Nevada 89145-4885
Telephone:  (702) 304-2335
Facsimile:  (702) 304-2336
scanepa@canepariedy.com
triedy@canepariedy.com

J. RANDALL JONES, ESQ.
Nevada Bar No. 001927
WILLIAM L. COULTHARD, ESQ.
Nevada Bar No. 003927
NATHANAEL R. RULIS, ESQ.
Nevada Bar No. 011259
**KEMP, JONES & COULTHARD, LLP**
3800 Howard Hughes Parkway, 17th Floor
Las Vegas, Nevada 89169
Telephone: (702) 385-6000
Facsimile: (702) 385-6001

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Summary of Argument in Opposition**

*Section II of this brief.*  This court should not rule on defendant's motions (ECF Doc. 8) before it decides whether it lacks subject matter jurisdiction and must remand the case.  *Section III of this brief.*  Plaintiffs have stated sufficient and plausible claims for relief sounding in violations of Nevada's Deceptive Trade Practices Act (NDTPA), breach of express and implied warranties, and unjust enrichment.  FRCP 8, 9(b) and 12(b).  All of these purely state-law claims have been sustained under similar circumstances in false labeling cases.  *Section IV of this brief.*  Plaintiffs' class action allegations should not be stricken on their NDTPA claims because: 1) the Act's plain language allows for common proof of causation (reliance) based on a "reasonable person" standard, which is 2) consistent with Nevada common law, legislative history and the underlying policy of the NDTPA; 3) because the unique facts and circumstances of this case are plainly different from those in the *Picus* case, such that a different outcome would be likely; and because 4) class certification of an NDTPA violation is substantially congruent with application of the reasonable person/consumer standard adopted by the Ninth Circuit under similar circumstances.

Finally, defendant's motions are characterized by a lack of candor.  Overall, motions to dismiss or strike of this kind, particularly of this character, are not favored or successful.

**II.     This Court Lacks Subject Matter Jurisdiction.**

This is a putative consumer class action brought on behalf of Nevada consumers who bought defendant's "Real Water" bottled water, each bottle prominently bearing a colorful label expressly stating that the water has been infused with negative ions (antioxidant electrons) that have unique, specific healing properties that distinguish it from other bottled waters.  ECF Doc. 2-1, 11.  This is likely why defendant recently removed

these statements from its labels, see infra at pages 12 -14 of this brief, after over a decade of deceiving the public using the former label.

Based upon the material misrepresentations of fact on every label, the putative class members have alleged four state-law based claims sounding in violations of Nevada's Deceptive Trade Practices Act, and common law express warranty, implied warranty and unjust enrichment laws.  The case was filed in Nevada state court and removed solely on the basis of federal question jurisdiction.   But there are no federal questions or "substantial" federal interests at stake; and, these false advertising claims are not preempted either, because the Federal Food, Drug and Cosmetic Act provides for no private right of action.  *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804 (1986) (finding removal of the action to federal court was improper, on facts practically indistinguishable from those here).[1]   Plaintiffs point this out to avoid the novel pitfalls associated with the court ruling on defendant's Rule 9(b), 12(b) and 12(f) motion if it has no subject matter jurisdiction.  *Special Investments Inc. v. Aero Air Inc.,* 360 F.3d 989, 995 (9th Cir. 2004) (vacating rulings made before subject matter jurisdiction was decided and the case remanded).

## III.      Opposition to Defendant's Rule 9(b) and Rule 12(b) Challenges

**1.      Plaintiffs' Well Plead Complaint Contains Sufficient Facts Which, If Accepted as True, State Plausible Claims for Relief.  The Facts of this Case Do Not Amount to the Rare Situation in Which Granting a Motion to Dismiss is Appropriate.**

A district court should only dismiss a case if the plaintiffs are found to have not pled "enough facts to state a claim to relief that is plausible on its face".  *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  A claim has "facial plausibility" if plaintiffs have pled factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged.  *Ashcroft v.*

---

[1] Plaintiff's contemporaneous motion to remand elaborates on these points.

*Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, ------- (2009).   And of course, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.   *Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1120 (9th Cir. 2007).   Finally, it is "rare" in false advertising cases to grant such a motion because whether a business practice is deceptive is usually a question of fact that is not appropriate for decision on demurrer.   *Williams v. Gerber Products Company*, 552 F.3d 934, 938-39 (9th Cir. 2008) (reversing district court's entry of dismissal).

The court is certainly free to read plaintiff's complaint and make its own pragmatic determination that a reasonable consumer would plausibly be deceived by the remarkable advertised qualities of Real Water.   ECF Doc. 2-1.   But if an exposition is required, then one is readily given.

The plaintiffs have alleged that they were purchasers and consumers of Real Water who, based on the false and misleading scientific and health claims repeated on every bottle, paid a premium price for cheap, treated tap water.   ECF Doc. 2-1, paragraphs 1 – 5, 10.   Therefore, the requirement to plead a "concrete injury" for purposes of standing to sue, commonality and typicality amongst class members has clearly been satisfied.   *Ries v. Arizona Beverages USA, LLC*, 287 F.R.D. 523, 536 (N.D. Cal. Nov. 27, 2012) (holding that paying a premium price based on deceptive advertising constitutes an actionable economic, concrete injury).   Regardless, plaintiffs have also established materiality and plausible grounds for deceit (injury) upon a "reasonable consumer" standard, evaluated at length in this brief.

The plaintiffs have identified the right defendant, which was easy because its identity appears on the label of every bottle. ECF Doc. 2-1, paragraphs 6 and 11.   The complaint alleges that Real Water has sold tens of thousands of the deceptively labeled

water bottles to Nevada consumers through Nevada venues over a long period of time, including the last several years (see above).  ECF Doc. 2-1, paragraphs 6, 10 and 25.

The plaintiffs have provided the offensive label for the court's own review (ECF Doc. 2-1, paragraph 11), and painstakingly cited the specific language expressly touting the special scientific and medical qualities of the water and explaining why, with abundant, competent references,  they are false and/or misleading.  ECF Doc. 2-1, paragraphs 12 – 20. [2]

The complaint goes on to assert class allegations based on four state law causes of action, each of which "plausibly" arise directly from the same common core of operative facts: the label itself.   For example, plaintiff's deceptive trade practice claim cites the specific provisions that the label violates and explains the factual basis and scientific reasoning for each one.  ECF Doc. 2-1, paragraphs 41 - 49.   The same is true of the breach of warranty and unjust enrichment claims, where specific facts are analyzed as part of the elements of proof.  In short, plaintiff has pled more than sufficient facts, which if assumed to be true, and consistent with numerous Ninth Circuit precedents, would sustain class certification based on each of the alleged causes of action pled in the complaint.

**2.    Plaintiffs Have Pled a Set of Deceptive Trade Practices Act Violations with Sufficient Particularity.**

Defendant conflates a consumer fraud cause of action pursuant to NDTPA with common law fraud.  The *Picus* case cited by defendants, for example, did not involve, consider or adopt a FRCP 9(b) standard. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D.Nev. 2009) (instead, discussing certification).   But it did indirectly affirm that a plaintiff sets forth a plausible claim for relief by pleading a violation of the Act that has

---

[2] Plaintiffs have also retained their own competent scientists, medical professionals and economists to review the Complaint and approve it.

1   caused damage – which plaintiffs have plainly done (see above).   A similar overstep is

2   defendant's citation to *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103 (9th Cir.

3   2003), *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*) and

4
    *Odom v. Microsoft*, 486 F.3d 541, 554 (9th Cir. 2007) for the same conflated proposition.
5
6   *Vess, Kern* and *Odom* do not stand for the proposition that a Nevada plaintiff alleging a

7   violation of NDTPA must plead some, or any, of its claims with Rule 9 particularity.

8   Instead, they only beg the question of whether the Act, or any part of it, requires proof of

9   fraud.[3]  And Nevada federal district courts that have looked directly at the matter are not in

10  complete agreement on the point.

11
            As far as state law goes, the Nevada Supreme Court held that a plaintiff asserting a
12
    NDTPA claim does not need to prove its case by a clear and convincing evidence
13
14  standard – applicable to fraud cases --, but only by a lesser preponderance of the

15  evidence standard as in any other "civil matter".  *Betsinger v. D. R. Horton, Inc.*, 126 Nev.

16  162, 165, 232 P.3d 433, 435 (2010) (drawing a clear distinction between statutory fraud

17  [oftentimes a misnomer] and common law fraud).   And the reason for the distinction is

18  because the consumer protection statutes are meant to provide consumers with a cause

19
    of action that is easier to establish than common law fraud.  *Id.*, citing *Dunlap v. Jimmy*
20
21  *GMC of Tucson, Inc.*, 236 Ariz. 338, 666 P.2d 83, 88-89 (Ariz.Ct.App. 1983).

22          It would seem to follow, then, that the Nevada Supreme Court would not apply Rule

23  9(b) to a Deceptive Trade Practices Act claim since the Nevada Legislature did not

24  specifically require it.  *Greystone Nevada LLC v. Anthem Highlands Community Ass'n.*,

25  U.S.D.C. Nev., July 9, 2012 (Order) (not reported in F.Supp. 2d), WL 2782603 (denying

26  that Rule 9(b) applies to violations of the Act,  based on *Betsinger*). *Cf.*, *Drover v. LG*
27

28  ³ And unlike *Vess*, plaintiffs do not allege common law fraud.

1   *Electronics*, U.S.D.C. Nev., October 18, 2012 (Order) (not reported in F.Supp.2d), WL

2   5198467 (subdividing Rule 8 and 9 responsibilities within the Act, but failing to consider

3   *Betsinger*).

4
5        Notwithstanding the questions on a lesser or greater pleading burden, Plaintiffs

6   have pled that the alleged deception occurred at point of sale in Nevada – as each bottle

7   prominently bears the label upon purchase – and has occurred continuously for over a

8   decade.  The complaint already states the identity of the parties, including a reasonably

9   objective and ascertainable class, and the nature of the false and/or deceptive labeling

10  with considerable particularity.  In addition, since the court is dealing with the same label

11  on every former bottle of water, regardless of who purchased it, specific details of time

12
13  and place for every transaction are not required to be plead.

14        Further, as noted earlier, the complaint even subdivides violations within the

15  NDTPA.[4]  None of them can fairly be read to imply fraud as an element of proof.   Plus,

16  the complaint does not merely recite conclusory violations of each provision.  Instead, it

17  individually and painstakingly explains why each allegedly false and/or misleading

18  statement violates each specifically identified provision of the Act.     ECF Doc. 2-1,

19  paragraphs 13 – 20, followed by 41 – 51. Taken together, these well plead allegations are

20
21  all that is required to satisfy a Rule 9 analysis and allow the defendant to defend itself.

22  *Rocker v. KPMG LLP*, 122 Nev. 1185, 1193, 148 P.3d 703 (2006), abrogated on other

23  grounds by *Buzz Stew LLC v. City of North Las Vegas*, 124 Nev.  224, at 228, 181 P.3d

24

25  [4] ECF No. 2-1, para. 13 identifies the 6 specific violations of the Act that are related to direct
    misrepresentations of fact on the common label.   [None of them have to do with whether REAL
26  WATER has an exclusive license to a proprietary process, a red herring. ECF No. 8: 9: 1-4]   2
    use the word "knowing", which is not equivalent to a showing of fraud, 1 goes to what the
27  defendant knew about its product, which is not fraud and is subject to objective proof, and the
    remaining 3 are purely objective and require no state of mind.  But overall, plaintiffs submit that
28  none of these violations should be treated akin to a fraud standard.

670 (2008) (providing that Rule 9 only requires specific averments about time, place, identity of parties and the nature of the fraud (or deception), <u>unless</u> this information is in the possession of the defendant [adopting a "relaxed pleading" standard]);[5]  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (cited by defendants for the same underlying general proposition, and actually supporting plaintiffs' argument that they have met the Rule 9 standard, if applicable at all); *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (holding that, in addition to alleging the time, place and content of an alleged misrepresentation, a "plaintiff must set forth what is false or misleading about a statement, and why it is false.").

Next, contrary to defendant's assertions that "intent" or "knowledge" is pled without specificity (see, e.g., ECF Doc 8, 9: 5-7, 17), plaintiffs can aver malice, knowledge and other conditions of mind generally.  *Rocker, id.*  Therefore, even if the Act is subdivided by any mild condition of mind, any Rule 9 state of mind requirements have been sufficiently plead.[6]

The court can also plausibly infer that the misrepresentations about the special characteristics and health properties of the water are material.  For example, the REAL WATER owner contends that the company developed a proprietary technology that nobody else has been able to reproduce, that yielded the water's special qualities.  ECF

---

[5] ECF No. 2-1, para. 24 (defining the Nevada class); para. 25 (stating: Plaintiffs submit that Defendants have sold REAL WATER to numerous Nevada consumers, likely in the thousands if not tens of thousands of purchasers and continues to do so.  It is expected that Defendants and their suppliers maintain records, including specific purchase records, for all or many of these transactions.  Defendants should make all efforts to preserve these records as they are on notice of this action.).

[6] One wonders why the defendant believes its citation to *Conway v. Circus Circus Casinos, Inc.* helps the court in any way.  It is entirely inapposite factually and legally.  *Conway* stands for the proposition that an employee injured on the job is required to plead more than a mere statement that an employer deliberately and specifically intended to injure him, to avoid the exclusive recovery provisions of the worker's compensation system.

Doc. 2-1, para. 15.  Yet, a number of scientists and doctors have said that these material attributes are impossible.  ECF Doc. 2-1, paragraphs 15, 16 and 18 (including references). Moreover, these attributes are the things that defendant has now removed from its label. So, the defendant's attempt to characterize select parts of the label as "puffery" because they only state an opinion or commendation of the goods, should be rejected.[7]

Completely unlike the facts in *Sylver v. Exec. Jet Mgmt.*[8], there is no way to similarly conclude that the ordinary consumer of REAL WATER, which bears a label that says the water was created by a proprietary method known only to REAL WATER, and that will transform a person, move the body to a more alkaline state by removing acid toxins, take in an abundance of antioxidant electrons and cause the user to experience increased cellular hydration [ECF Doc. 2-1, 11], are not likely to deceive a reasonable consumer.    *Bruton v. Gerber Products Company*, 961 F.Supp.2d 1062, 1095 (USDC, N.D. Cal. 2013) (providing that misdescriptions of specific or absolute characteristics of a product are actionable, and are not boasts, superlatives or puffery.); *Edmundson v. Procter & Gamble Co.*, 537 Fed.Appx. 708, 709 (9th Cir. 2013) (same); *In re Clorox Consumer Litigation*, 894 F.Supp.2d 1224, 1233 (same).

If anything, the REAL WATER labeling is obviously more material and grossly more misleading than the examples evaluated and passing muster in the above cases.  In fact, they are "literally false" because they violate the laws of nature.    *FLIR Systems, Inc. v. Sierra Media, Inc.*, 903 F.Supp.2d 1120, 1129 (U.S.D.C. Ore. 2012) (holding literally false

---

[7] The court may note some inconsistency in defendant's arguments.    It suggests that its misrepresentations are mere "puffery" (ECF Doc. 8, 10: 2-4), after it argued:  "Defendant clearly endorses its product and can prove each of the allegations set forth in the label".  ECF Doc. 8, 9: 15 – 16.  But even earlier, defendant admits that it changed it's label-significantly.  See, supra in this argument.

advertisements create a presumption of deception and reliance, Lanham Act case); *Avid Identification Systems, Inc. v. Schering-Plough Corp.*, 33 Fed.Appk 854, 856 (9th Cir. 2002) (applying same standard to state law claims under California's business code because they are "substantially congruent" to Lanham Act violations). In following, the material misrepresentations at issue here justify a presumption of deception and reliance because every member of the class was uniformly exposed to the label, which was on every bottle sold.    *Morales v. Unilever, Inc.*, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) (holding that plaintiffs alleging that representations that products contain only natural ingredients is "material to a reasonable consumer" and sufficient to invoke a presumption of reliance of California's Unfair Competition Law, citing *Bruton*); *Brown v. Hain Celestial Group, Inc.*, 2015 WL 3398415 (S.D. Cal. May 26, 2015) (finding materiality is presumed where product mislabeled as organic was likely to deceive a reasonable consumer), citing further to *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).   These cases also stand for the similar proposition: that material violations of state consumer protection statutes focus on the conduct of the defendant, and are not keyed to an individual's state of mind.   Taken together, these are the reasons why the *Brown* court found from the basic mislabeling of the product that there was class-wide materiality and class-wide reliance.   See also, as a point of comparison, plaintiffs' fully pled violation of NRS 598.0925 (providing that an assertion of scientific, clinical or quantifiable fact which would cause a "reasonable person" to believe it was true, is a violation of the Act).   ECF Doc. 2-1, 43, 49.

---

[8] *Sylver v. Exec. Jet Mgmt.*, No. 2:10-cv-01028-RLH-RJJ, 2011 U.S. Dist. LEXIS 255, at *9 (D.Nev. Jan. 3, 2011) (holding that a Plaintiff could not reasonably rely on obtaining a specific aircraft since the contract said the aircraft was subject to change).

But perhaps the most glaring example of materiality, non-puffery and perhaps even an admission against interest, is defendant's reference to its "current label", which it conveniently does not provide for the court's inspection (ECF Doc. 8, 6:25), which it does not dare to compare to the one identified in the Complaint, and which it fails to say when/why it was recently introduced. **Exhibit 1**.[9]   Defendant **substantially** changed the very scientific and health claims on its label that plaintiffs complain about.   A side by side comparison of the labels appears below (old to left, new to right):

 

---

[9] Exhibit 1 is a picture of the "current" label, which was picked up at a grocery store after the motion to dismiss was filed.  Affidavit of counsel, attached.

Plainly, many of the false and/or misleading scientific and health claims made on the old bottle have just been turned from something concrete into smoke.  The defendant's made the following affirmation of facts, descriptions and promises related to the water that have now been removed from the label:

- Compare this to most purified waters which are acidic and positive ionized
- Many health professionals believe that an acidic body can be unhealthy
- Since Real Water is alkalized and negatively ionized, it can help your body to become more alkalized to improve your health
- Move your body to an alkalized state by removing acidic toxins
- Take in an abundance of antioxidant electrons to neutralize harmful free radicals
- Experience increased cellular hydration like never before![10]

Whether considered pursuant to Rule 8 and/or Rule 9, the plaintiffs' Nevada Deceptive Trade Practices Act cause of action provides sufficient information to set forth the kind of plausible claims which routinely overcome Rule 12(b)(6) and 9(b) challenges.  And again, this conclusion is consistent with a body of Ninth Circuit cases rejecting the defendant's plausibility arguments in deceptive trade act (or similar) cases, because whether a label is deceptive to the "reasonable consumer" (not any particular individual) is generally a question of fact that is not appropriate for resolution on the pleadings.  See, e.g., *Bruton v. Gerber Products Company*, 961 F.Supp.2d 1062, 1089 (USDC, N.D. Cal. 2013), citing *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).  Also, it is abundantly clear that defendant is aware that it's not-so-old label, used for over a decade until now, was materially false, misleading and legally indefensible, because it recently changed the label.

Finally, plaintiffs submit that a claim for violation of NDTPA does not accrue until the aggrieved parties' discovery facts that constitute the violation.  NRS 11.190(2)(d).  And

---

[10] The Court may also take notice that defendant removed the term "healthiest" drinking water available from the label, and replaced it with "taste fantastic".

there is no reason to believe that any of the plaintiffs or putative class members knew that the labeling was false when they bought it. In fact, the material nature of the misrepresentations entitles them to a presumption of deceit and reliance on a class-wide basis during the entire course that the defendant's former label was exclusively on the market.

> **3.     Plaintiffs Have Pled Breach of Express Warranties with Sufficient Particularity Under Rule 8.**

Defendant's 1 ¼ page argument trying to summarily dismiss plaintiff's express warranty cause of action lacks candor.

Above, plaintiff set forth a good number of the label's disputed scientific and health claims that were recently removed from the product label. All of these original affirmations and promises, as well as others, were incorporated by reference into the express warranty cause of action – to avoid repetition. ECF Doc. 2-1, paragraph 54. And plaintiffs plainly said they purchased the product based on the labeling. ECF Doc. 2-1, paragraph 55.

As noted above, these affirmations, promises and descriptions of the water's unique health benefits are material, and plaintiffs are even entitled to a presumption of reliance and deceit. Better yet, reliance is not even a prerequisite for an express warranty claim as long as the express warranty was a part of the bargain, which was similarly pled. ECF Doc. 2-1, paragraph 56. *Allied Fidelity Ins. Co. v. Pico*, 99 Nev. 15, 17-18, 656 P.2d 849, 850 (1983). Plus, there is absolutely no evidence that the plaintiffs examined the label and independently determined the scientific and health representations were false, and still bought the product.[11] And any such incredible defense, if even allowed given the presumptions of deceit and reliance, would be for a trier of fact to decide. *Id.*

---

[11] Is defendant saying that its customers should have known that its labeling was false? This seems to be the argument. ECF Doc. 8, 10: 5-6.

Also, for good measure, federal and state courts alike have often found that false labeling claims asserting breach of express and implied warranties – much like this one– are appropriate for class certification.   See, by way of example only, as there are numerous others: *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 983 – 987 (U.S.D.C. CD Cal. 2015) (consumers of Wesson oils labeled as 100% natural, but containing genetically modified organisms); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 -506 (U.S.D.C. CD Cal. 2013) (consumers of Kashi food products labeled as "Nothing Artificial" or "All Natural", but containing synthetic ingredients).

Finally, plaintiffs agree that their express and implied warranty claims are likely subject to a four-year statute of limitations.   NRS 104.2725.   Though Nevada courts have not clarified what is required for an express warranty to "explicitly extend to future performance", the Ninth Circuit has adopted the rather harsh majority rule in constructing statutes similar to Nevada's NDTPA.   *Western Recreational Vehicles, Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547, 1549-53 (9th Cir. 1994).   Similarly, the Ninth Circuit has said that the "future performance" language does not usually apply to implied warranty claims. *J.B. Painting and Waterproofing v. Rgb Holdings, LLC*, 650 Fed.Appx 450, 453-4. However, defendant may be estopped from asserting the 4 year limitation to plaintiff's implied warranty claim based on the doctrine of fraudulent concealment.        *Roberts v. Electrolux*, 2013 WL 7753579 (C.D. Cal. March 4, 2013); *Phillips v. Ford Motor Co.*, 2016 WL 1745048 *15 (N.D. Cal. May 3, 2016).   This will require further discovery regarding defendant's prior knowledge that its labeling, now removed, was false, while defendant continued to advertise using the old label.

**4.      Plaintiffs have Pled a Breach of Implied Warranty Claim with Sufficient Particularity Under Rule 8.**

Defendant's argument for the dismissal of plaintiffs' properly pled breach of implied warranty claim can be summarized as this: "we can lie and deceive our customers into paying a premium price for bottled tap water, with impunity, as long as it is drinkable". But as it turns out, defendant's argument lacks candor.

There are a number of ways that a breach of the implied warranty of merchantability can be established. NRS 104.2314(2)(a)-(f). For some inexplicable reason, defendant only talks about element (c) (fit for the ordinary purposes for which such goods are used). But element (f) (conform to the promises or affirmations of fact made on the container or label) is what is at issue and set forth clearly in the complaint. See ECF 2-1, paragraphs 56 and 57. *Zacharia v. Gerber Products Co.*, 2015WL 3827654 (stating: "Plaintiff's breach of implied warranty claim is based on alleged affirmative representations made by defendant on the labeling of the formula. Thus, the claim is not based on an alleged failure by defendant to conform to the intended purpose of infant formula in general.").

As set forth in detail earlier, plaintiffs' claim rests on compelling (or certainly plausible) claims that every bottle of REAL WATER bearing the former label made materially false and misleading scientific and health promises and affirmations. Plus, nowhere in plaintiffs' complaint do they state or claim that the water was not drinkable. If anything, plaintiffs portrayed it as nothing more or less than safe, inexpensive, publicly subsidized potable Lake Mead tap water. ECF 2-1, paragraph 10.

Finally, the court may note that defendant tries to unintelligibly defend itself by pointing out plaintiff's contention that the water was already alkaline from its source, another misleading ploy. ECF 2-1, paragraph 5. But REAL WATER removed the term "alkalized water" from its new label – again acknowledging that its initial offering was misleading because the water that it "manufactured" was already alkaline; i.e., they were not giving consumers anything more by way of alkalinity than the Lake Mead tap water used as its source. So, plaintiff has no idea how this argument, or admission against interest, helps defendant avoid another violation of NRS 104.2314(2)(f).

**5.     Plaintiffs have Pled an Unjust Enrichment Claim with Sufficient Particularity Pursuant to Rule 8.**

Defendant contends that plaintiff's unjust enrichment claim cannot coexist with its other "adequate" causes of action.   ECF Doc. 8, 20-28.   Setting aside the fact that defendant contends that plaintiffs' other causes of action should be dismissed, defendant's unanalyzed citation to a Nevada case does not support defendant's argument.

In *Las Vegas Valley Water District v. Curtis Park*, 98 Nev. 275, 278, 646 P.2d 549, 551 (1982), the Nevada Supreme Court held that a district court lacked discretion in equity to alter the state engineer's permit decision which was mandated by state statute.     By direct reference to *Eagle Thrifty Drugs & Markets, Inc. v. Hunter Lake Parent Teachers Ass'n.,* 85 Nev. 162, 451 P.2d 713 (1969), it was clear the court was merely holding to the proposition that equity cannot directly interfere with, or in advance refrain, the discretion of an administrative body's exercise of legislative power.   And plaintiffs herein are not asking the court, in equity, to interfere with any administrative body's exercise of discretion pursuant to state statute.

Here, plaintiffs set forth a plain and simple claim that defendant received a financial benefit from its transactions with plaintiffs that it would be unjust for it to retain (ECF Doc. 2-8, paragraphs 63 – 65)—a classic case of unjust enrichment.   *Certified Fire Prot. Inc. v. Precision Constr.*, 128 Nev.Adv.Op. 35,283 P.3d 250, 256-57 (2012) (expounding on unjust enrichment as a subspecies of quantum meruit that is not based on contract, as a stand-alone claim in Nevada).   And, there is nothing wrong with pleading this claim in the alternative in a false labeling case, pursuant to Rule 8(d)(2).   *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015).

Next, defendant argues that plaintiff's unjust enrichment claim is barred because the plaintiffs have "plead the existence of an express contract with Defendants".   ECF Doc. 8, 12: 9-11.   This is simply false, as the court may take judicial notice that plaintiff's

1   complaint does not allege the existence of an express contract or a breach of contract

2   cause of action.  ECF Doc. 2-1.

3       Finally, an unjust enrichment claim is subject to a four-year statute of limitations.

4   NRS 11.190(2)(c).  However, the cause of action does not accrue until the claimants

5   knew, or should have known, of the facts giving rise to the claim.  And this is for the trier of

6   fact to determine.  *In re Amerco Derivative Litigation*, 127 Nev.Adv.Op. 17, 252 P.3d 681,

7   703 (2011); *Nanyah Vegas LLC v. Rogich*, 2016 WL 606896 (D. Nev. February 12, 2016).

8   **IV.   Opposition to Defendant's Rule 12(f) Motion to Strike NDTPA Class**

9   **Allegations.**

10      **1.   The Motion to Strike Should be Limited to Plaintiff's NDTPA Claim, the**

11      **Sole Scope Evaluated in *Picus*.**

        Defendant relies almost exclusively upon the *Picus* decision for its motion to strike

12  class allegations.  *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651(D. Nev. 2009).[12]   In

13  *Picus*, the district court struggled with whether the Nevada Supreme Court would permit

14  an inference of reliance "under the circumstances" of that particular NDTPA case.  *Id.* at

15  659.   The court did not evaluate whether other causes of action, which do not have any

16  supposed reliance requirement (e.g., breach of warranties, see infra), would be subject to

17  rarely-granted, Rule 12(f) scrutiny. *Id* at 655.  Therefore, defendants have presented this

18  court with no binding or competent authorities to strike plaintiffs' class allegations on the

19  NDTPA claim, let alone across the board, and it would be unfair for defendant to raise

20  new authorities for the first time in reply.  Plus, as noted earlier, many courts have granted

21  class certification of deceptive trade practice, breach of warranty and unjust enrichment

22  causes of action in false labeling cases based on persuasive or more compelling

23  authority.

24

25

26  _____

27  [12] LR IA 7-3 (Citations of Authority), subsection (f) provides:  "A decision by one judge in this
    district is not binding on any other district judge (unless the doctrines of law of the case, res

28  judicata, or collateral estoppel otherwise apply) and does not constitute the rule of law in this
    district.

**2.     The *Picus* Case Is Also Distinguishable on the Facts.  Plus, there is Reason to Believe the Same Court May Have Come to a Different Outcome had the Court been presented with REAL WATER.**

Plaintiffs in the *Picus* case alleged that "Ol'Roy" dog food products contained Chinese ingredients that were not "Made in the USA", which representation appeared on the packaging of its products along with a lot of other information.  First, the court questioned whether customers even saw the "Made in the USA" label. *Id.* at 658.  Second, the court questioned whether the "Made in the USA" labeling, even if it was seen, was material, questioning the underlying premise that something "Made in the USA" means something of higher quality.  *Id.* at 658.  Third, there seemed to be no evidence that "Ol Roy" pet food was priced higher because of the "Made in the USA" label, or that consumers paid a higher price because of this labeling. *Id.* at 658.

On the other hand, the *Picus* court recognized instances where other courts made a presumption of reliance if a defendant made a material misrepresentation to all class members:

> "In *Wiener*, the court inferred reliance because misrepresentations concerning the clinically proven health benefits of yogurt were displayed prominently on packaging, all class members must have seen the packaging upon purchasing the yogurt, and the defendants pointed to no meaningful differences with other yogurt, such as flavor or serving size, that might have influenced consumer purchases".

*Picus*, at 659.

Here, like *Wiener*, each bottle of REAL WATER prominently displayed the false and misleading scientific and health claims that defendant claims distinguished its water from its un-REAL competitors.  For defendant to claim that the "reasonable consumer" purchased this expensive, filtered tap water because they were thirsty and had no other choices, the color of the bottle, celebrity endorsements, ecological plastic or local preferences (Doc. 8, 19) is to totally disregard the materially false and misleading claims that gave the water its entire brand identity.  Plus, defendant has now completely changed its label to remove these false and misleading claims.

So, unlike the unique facts presented in *Picus*, this court does not have to struggle to plausibly infer prominence, materiality, reliance or injury with respect to the labeling of REAL WATER.

**3.    The Nevada Deceptive Trade Practice Act is based on the "Reasonable Consumer" Model, Not Individual Reliance/Causation.**

As noted further above, it is impossible to reconcile an individual reliance/causation requirement with the plain language of NRS 598.0925, by way of example, which adopts a "reasonable person" standard by legislative mandate. In fact, NRS 598.0925 is not the only section of the NDTPA to incorporate the "reasonable person" standard. *See* NRS 598.0918 (defining deceptive trade practice to conduct a solicitation or sales presentation "in a manner that is considered by a reasonable person to be annoying, abusive or harassing"); NRS 598.1305 (prohibiting persons soliciting charitable donations from making any claim or omission that "has the capacity, tendency or effect of deceiving or misleading a person acting reasonably under the circumstances"; NRS 598.136 ("'language of the advertisement' means the use of any language that has the tendency to lead a reasonable person to believe . . ."); and NRS 598.138 ("specially selected" means the use of language that has a tendency to lead a reasonable person to believe . . ."). Notably, none of the foregoing provisions requires that a consumer be actually misled; rather, each provision and the Act as a whole, focuses on the content of the representations being made and whether such representations would mislead a reasonable person.

This focus is in keeping with the intent of the Nevada Legislature. Specifically, the "reasonable man" standard was inserted into the bill "so that violations of the act could be more easily proven." Hearing on AB 301, Before the Commerce Comm., 57th Leg. (Nev. March 28, 1973), a sentiment later expressed in *Betsinger*.  Additionally, when testifying in favor of adoption the 1989 amendments to NRS 598, Larry Struve, Department of Commerce, Mr. Struve further explained,

1
2
3
4
5
6
7

> What we are trying to get across in A.B. 275 is to encourage those who are making assertions of fact that they intend for a reasonable person to believe is true, so they can make their decision to buy whatever product or service they are selling, to make that a truthful representation so that the playing field is even in the market place, and the consumer is making the decision based on whatever they believe is the best bargain in town or the lowest price or whatever . . .[I]t is called 'the reasonable man standard.' . . . it would be decided on a case by case basis. In the system now it would probably be a jury who would decide whether or not a reasonable man or common sense would apply.

8
9
10
11
12
13
14
15
16
17

Hearing on AB 275, Before the Senate Comm. on Commerce and Labor, 65th Leg. (Nev. April 26, 1989). During that same hearing, Mr. Robert Barengo testified "that deceptive advertising was a problem all over the country," and "stressed when people say it is a scientific fact that their product is the best then . . . that gives much more weight to the advertising." Id. Importantly, the amendments to the NDTPA being discussed at this hearing were based on the Federal Trade Commission ("FTC") rule regarding substantiation in advertising. Id. Thus, additional evidence of the legislative intent behind these amendments can be found in the FTC's Policy Statement Regarding Advertising Substantiation, which clearly states,

18
19
20
21
22
23
24
25

> Objective claims for products or services represent explicitly or by implication that the advertiser has a reasonable basis supporting these claims. **These representations of substantiation are material to consumers. [fn 2 Nor presumably would an advertiser have made such claims unless the advertiser though they would be material to consumers.]** That is, consumers would be less likely to rely on claims for products and services if they knew the advertiser did not have a reasonable basis for believing them to be true . . . [T]he Commission **assumes** that consumers expect a 'reasonable basis' for claims . . . The Commission will take care to assure that it only challenges reasonable interpretations of advertising claims.

26
27
28

*Advertising Substantiation Policy Statement*, appended to *Thompson Medical Co.*, 104 F.T.C. 648, 839 (1984) (aff'd, 791 F.2d 189 (D.C. Cir. 1986)) (cert. denied, 479 U.S. 1086 (1987) (emphasis added)).

Rather clearly, the focus of the Act is on the conduct of the defendant, not the state of mind of each consumer.  In *F.T.C. v. Figgie Intern., Inc.*, the Ninth Circuit was called upon to interpret similar statutory language in a Federal Statute. 994 F.2d 595 (9th Cir. 1993). The provision at issue stated, in pertinent part, "If the Commission satisfies the court that the act or practice to which the cease and desist order relates is one **which a reasonable man would have known under the circumstances** was dishonest or fraudulent, the court may grant relief under subsection (b) of this section." 15 U.S.C. § 57b(a)(2) (quoted in *Figgie*, 994 F.2d at 603) (emphasis added). The Ninth Circuit rejected appellants argument that the phrase "reasonable person would have known" required actual knowledge, and held, "Congress unambiguously referred the district court to the state of mind of a hypothetical reasonable person, not the knowledge of the defendant. The standard is objective, not subjective." *Figgie, 994 F.2d at 603*. Likewise, the Court rejected Figgie's argument that redress should be limited to consumers who could prove actual reliance. *Id*. at 605. The Court held, "A presumption of actual reliance arises once the Commission has proved that the defendant made material misrepresentations, that were widely disseminated, and that consumers purchased the defendant's product." *Id*. at 605-06.  Here, the "reasonable person" standard set forth in NRS 598.0925 unambiguously refers to a hypothetical reasonable person, not the individual named plaintiffs.

It is also difficult to reconcile the public policy supporting consumer protection with an individual inquiry.  In *Powers v. United Services Auto. Ass'n*, 115 Nev. 38, 979 P.2d 1286 (1986), the Nevada Supreme Court held that a false representation is material if it concerns a subject relevant to the inquiry and if a reasonable person would attach importance to that fact.  Similar, *Pegasus v. Reno Newspapers, Inc.,* 118 Nev. 706, 715, 47 P.3d 82, 88 (2002) (holding, that in determining whether a statement is actionable for

1   the purposes of a defamation suit, the court must ask "whether a reasonable person

2   would be likely to understand the remark as an expression of the source's opinion or as a

3   statement of existing fact [citation omitted]").

4       Also, it is difficult to reconcile the outcome in *Picus* with the holding in *Williams v.*

5   *Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) and its many progeny. See, e.g.,

6   *Jones v. ConAgra Foods, Inc.*, 912 F.Supp.2d 889, 899 (deceptive labeling claims under

7   substantially congruent California deceptive business practice statutes are evaluated by

8   whether a reasonable person would likely be deceived)[13]; *Ebner v, Fresh, Inc.* __ F.3d __,

9   2016 WL 5389307 (9th Cir. 2016) (stating that under reasonable consumer test, plaintiff

10  must make a plausible showing that members of the public are likely to be deceived). And

11  *Betsinger* made it pretty clear that the Nevada Supreme Court was looking to the intent of

12  other states' substantially similar consumer protection laws to support its easing of proof

13  requirements.

14      Next, *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir. 2004), cited in

15  *Picus* and defendant's brief, merely stands for the proposition that there are limits on

16  when a presumption of reliance arises in civil RICO claims.  This limited application to

17  RICO claims can be seen in the cases following *Poulos*, none of which involve deceptive

18  advertising claims.    In following, *Poulos* should have no precedential bearing on whether

19  a presumption of reliance applies in consumer false advertising cases pursuant to state

20  law, which follow *Williams*.

21      Finally, the *Picus* court did not find that any individual questions of damages would

22  preclude certification.  Just the opposite. *Picus*, at 658.  In fact, the only reason the court

23  dismissed the class action allegations with respect to the deceptive trade practices act

24  claim was its fact-specific determination that a presumption of reliance/causation would

25

26  [13] Cases interpreting California's deceptive practices act are of particular importance to the interpretation of NRS 598.0925, as the text of California's act was included as an exhibit
27  considered by Nevada's Legislature when enacting AB 275, which amended NRS 598.0925. Hearing on AB 275, Before the Senate Comm. on Commerce and Labor, 65th Leg. (Nev. May 5,
28  1989).

1  presumably be required by the Nevada Supreme Court.  Otherwise, it certainly looked like

2  the court would have granted class certification.

3

**V.      Conclusion**

4

5       For all of these reasons, plaintiffs ask first that this court withhold ruling pending

   disposition of its subject matter jurisdiction and remand.   But if the matter is not
6
   remanded, then plaintiffs ask that defendant's motions to dismiss and to strike be denied.
7
       DATED this 21st day of October 2016.
8

9                                 **CANEPA RIEDY ABELE & COSTELLO**

10

11
                                    /s/   Terry W. Riedy
12                                 SCOTT K. CANEPA, ESQ.
                                   Nevada Bar No. 004556
13                                 TERRY W. RIEDY, ESQ.
                                   Nevada State Bar No. 003895
14                                 851 South Rampart Boulevard, Suite 160
                                   Las Vegas, Nevada 89145-4885
15                                 Telephone:  (702) 304-2335
                                   Facsimile:  (702) 304-2336
16                                 scanepa@canepariedy.com
                                   triedy@canepariedy.com
17

18                                 J. RANDALL JONES, ESQ.
                                   Nevada Bar No. 001927
19                                 WILLIAM L. COULTHARD, ESQ.
                                   Nevada Bar No. 003927
20                                 NATHANAEL R. RULIS, ESQ.
                                   Nevada Bar No. 011259
21                                 **KEMP, JONES & COULTHARD, LLP**
                                   3800 Howard Hughes Parkway, 17th Floor
22                                 Las Vegas, Nevada 89169
                                   Telephone: (702) 385-6000
23                                 Facsimile: (702) 385-6001

24
                                   *Attorneys for Plaintiffs*
25

26

27

28

## **CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b), I certify that I am an employee of CANEPA RIEDY ABELE & COSTELLO, and that on this 21st October, 2016, I did cause a true and correct copy of PLAINTIFFS' OPPOSITION TO AFFINITYLIFESTYLES.COM, INC. d/b/a REAL WATER'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6) AND 9(B); AND MOTION TO STRIKE PURSUANT TO FRCP 12(F) to be served via electronic service by the U.S. District Court CM/ECF system to the parties on the Electronic Filing System:

Josh Cole Aicklen, Esq.
David B. Avakiam, Esq.
Paige S. Shreve, Esq.
Lewis Brisbois Bisgaard & Smith LLP
6385 S. Rainbow Boulevard, Suite 600
Las Vegas, NV 89118
*Attorneys for Affinitylifestyles.com, Inc. d/b/a Real Water*

J. Randall Jones, Esq.
William L. Coulthard, Esq.
Nathanael R. Rulis, Esq.
Kemp Jones & Coulthard, LLP
3800 Howard Hughes Pkwy., 17th Floor
Las Vegas, NV 89169
*Attorneys for Plaintiffs Jennifer Nunes; Dennys Sian; Ramona Wells, Jayson Morgan and Keyatra Grant*

_____
An Employee of Canepa Riedy Abele & Costello